HOLMES COUNTY *v.* ELLIS, EX-SHERIFF.

(In Banc. May 24, 1943.   Suggestion of Error Overruled July 19, 1943.)

[13 So. (2d) 635.   No. 35265.]

P. P. Lindholm, of Lexington, for appellant.

Neill, Clark & Townsend, of Indianola, for appellee.

128

130

**G. H. McMorrough,** of Lexington, for appellee.

134

**Per Curiam.**—The appellee was sheriff of Holmes County for the term including the years 1936 to 1939; and this is an action by him against the county to recover a balance alleged to be due him for services rendered by him to the county's circuit court and its board of supervisors during his term of office.

He was made, at the proper time, allowances by the circuit court and by the board of supervisors, for the services rendered by him, and received payment therefor. But after his term of office expired he ascertained that he had been allowed less than his statutory payments for such services.

Holmes County, at all times during the appellee's term of office, had a population in excess of 32,000, and his compensation for the services here claimed to have been rendered by him is governed by paragraphs (e), (f) and (g) of section 1804, Code 1930, whereas his previous allowances were made under chapter 201, Laws 1932, applicable only to counties of less than 32,000 in population.

The declaration is in two counts, and alleges, in substance:

1. That he was allowed, and collected, at each term of the circuit court, for the attendance of himself and one deputy thereon, $3 per day each, when he should have received therefor $5 per day each, leaving a balance due him of $2 per day for himself and one deputy for the number of days that the court was in session.

2. That he was allowed and received, at each term of the court, less than he was entitled to under paragraphs (f) and (g) of Section 1804. The total amount claimed to have been due him under this count of the declaration being $1,956.

The second count alleges:

1. That he was allowed by the board of supervisors $3 per day for himself and one deputy in attending its sessions, when he should have been allowed, under paragraph (e) of section 1804, $5 per day for each thereof.

2. The board of supervisors has not paid him any part of the $50 per year allowed sheriffs under section 1789, for entering, serving and recording overseer's commissions, etc.

The total amount alleged to be due him in the second count of the declaration is $824.

Afterwards this declaration was amended so as to allege that the appellee had paid into the county treasury $200 by mistake, and asked for its repayment.

The county filed a plea of the general issue, gave notice thereunder, and introduced evidence to support a set-off of (1) $1,012.48 theretofore allowed by the circuit court and paid the appellee by the county for gasoline and oil used by his deputies in automobiles; (2) per diem fees allowed and paid him for the service of deputies rendered prior to the convening of the sessions of the circuit court; and (3) per diem fees allowed and paid him for the attendance of one deputy in addition to himself on sessions of the board of supervisors. Afterwards the county requested permission to withdraw its plea of the general issue, and to file a plea of res judicata, but was not permitted so to do. The case was tried without a jury, and there was a judgment for the appellee on the first count of his declaration for $1,756, and for the amounts prayed for in the second count, and in the third amended count thereof. The county appeals and there is no cross-appeal by the appellee.

The evidence supports the appellee's claim as to the number of days that he and one deputy attended the sessions of the circuit court and board of supervisors, that he was paid $3 per day for each of them, and that he had received no payments under section 1789 of the Code. No

bill of particulars was filed by the appellee, setting forth the services rendered by him under paragraph (f) of Section 1804, and section 1789, Code 1930; and of the fees in state cases for which he claims to be entitled to payment by the county under paragraph (g) of section 1804 of the Code; the court declined to require him to file such, and he offered no evidence as to what services he actually performed thereunder.

As to the appellant's claim that the allowances heretofore made the appellee for the services here rendered is res judicata of his claim now made for additional allowances therefor, a majority of the Judges, pleading aside, are of the opinion that there is no merit therein.

Each of the allowances here made the appellee by the court below is approved either by a majority, or by three Judges of this court. Four of the Judges say that the allowances to the appellee by the board of supervisors for gasoline and oil were illegal, and should not have been made; but three of them say that having been allowed and paid him, he cannot be charged back therewith.

The reasons given by the Judges for their holdings are so diverse that no attempt will be made to state them in this memorandum.

Affirmed.

**Griffith, J.**, delivered a concurring opinion.

There is not a county in this state wherein the fees and allowances provided by law for the sheriff, under our antiquated statutes on that subject, will pay even the expenses of the sheriff's office as such, if the sheriff performs faithfully, diligently, and fully, and at all times, day or night, all the manifold duties imposed upon him by law, under modern conditions, and this with the most liberal construction that can be placed on the fees and allowances statutes as regards the sheriff's office. And this is not something which we have discovered in the extended examination which we have devoted to this

case. It was the subject of a recent address by one of our ablest circuit judges, wherein he called attention to this fact, and to the hopelessness of having the law fully enforced in most counties under such a statutory set-up. But the case here before us is unique in this: That it is the first occasion in which the board of supervisors of a county has ever resisted the payment of what was due to the sheriff under a confessedly applicable statute, but has gone further and sought to set off against him the allowances already made, inadequate as they were as made, and when the inadequacy of fees and allowances to the sheriff is considered as a whole and as against all the duties which the sheriff is required to perform, for many of the most important of which, it is not pretended that any fees or allowances are provided for him at all, or if so, only in a manner not at all commensurate with the services required.

Our present statutes on sheriff's fees and allowances are scarcely more than recopies of what was the Code of 1880 on that subject—more than sixty years ago. In 1880, when the Revised Code of that year was adopted, the state had not yet recovered from the drain and destruction caused by the Civil War and from the plunderings of the carpetbaggers then only lately evicted from its borders. But peace and quietude had been completely restored, although the people were yet impoverished beyond that ever known in any section of the nation before or since.

Section 447, Rev. Code of 1880, embraced a schedule of the fees and allowances for sheriffs which, for those days of the ox wagon and the horse and buggy, and when, as already mentioned, quietude was the order of the day, and when a dollar would purchase as much in goods or services as three dollars would now, may have been considered with some reason as being sufficient to maintain the sheriff's office, without loss to the officer, in view of the narrow range of effort than actually required of him in the performance of his duties and that being suffi-

cient to maintain the sheriff's office without loss, he could get a fair over-all compensation by resort to his commissions as tax collector. In that day labor on the farm, for instance, and this was about all that labor was employed upon, could be freely procured at ten dollars a month, and any man who earned as much as one hundred dollars a month in any private employment was looked on in wonderment.

The cited section of the Code of 1880 contained a schedule of costs fees in litigated cases, which remains practically unchanged to this day, and contained two additional paragraphs, one of which is in the same language as subsection (e) Section 1804, Code 1930, and the other in the same language substantially as subsection (f) Section 1804; and Section 448, Code 1880, was in the same language as subsection (g) Section 1804, and the same language persisted in the Annotated Code of 1892, Sections 2000, 2001 and 2002, and in the Code of 1906, Sections 2176 and 2177, and 2178. The Code of 1892 did make the gesture, however, of increasing the allowance under what is now subsection (f) to $100 instead of $50 per year.

When the Code of 1880 was adopted and even when the Code of 1892 was enacted, crime, as a business, had not made its appearance in this state. There was nothing here to steal and nobody had any money with which to buy the products of crime, and there were no improved highways or automobiles by which criminals could escape to hiding places in large towns or cities. In 1892 there were only nine circuit court districts in the state, some of the districts embracing twelve counties each, and there were only sixteen counties in which the circuit courts were scheduled to sit more than twelve days twice a year, civil and criminal business included.

The Code of 1906 made no changes except that what had been allowable under Section 448, Code 1880, above quoted, being Section 2002, Code 1892, now subsection (g), in the sum of $50 was increased to $100. The sheriff

was still allowed $2.00 per day for himself and deputy for attendance upon court terms—a sum which by that time common laborers were beginning to be able to get.

The Code of 1930 brought forward these antiquated statutes, then fifty years old, and by Section 1789, Code 1930, the same schedule of costs and allowances was re-enacted; but it did venture to raise the pay for attendance of the sheriff and deputy upon court terms to $3 per day, and by Section 1804, applicable only to counties of more than 32,000 in population, the sums fixed at $100, respectively, were raised to $250 under subsection (f), and to $750 under subsection (g), being in the same words otherwise as subsection (a), Sec. 2177, Code 1906, $100, and Section 2178, Code 1906, $100, and the pay of the sheriff and deputies for court attendance was raised to $5 per day.

When the Code of 1930 was enacted and certainly within the twelve years that followed, up to the last legislative session in 1942, it would seem that some thoughtful and responsible group in the legislature would have found out that the sheriff's office in this state cannot now be conducted and maintained, if the sheriff performs fully every duty imposed upon him as sheriff, except at a loss to the sheriff and unless he dig into his pocket as tax collector to make up those losses. The world which we live in now as compared with 1880 or 1892 is as if another world, and particularly so as regards the responsibilities and tasks with which a sheriff is now confronted. What these ancient statutes of fees and allowances now amount to, even with the most liberal construction of and allowances under these statutes, is but little more than a token payment, and while it is to be said to the credit of most sheriffs that they have dug deeply into their pockets as tax collectors to get the balance of the money to run the sheriff's office, it is not to be expected as a matter of human experience that token payments, as a rule, will produce much more than token services.

There would be some excuse for the contention that the tax collector shall pay the expenses of a proper and vigorous administration of the office of sheriff if there were a rational or logical relation between the assessed value of the property in the several counties as compared with what the sheriff must do as a law enforcing officer in the counties respectively. But no such relationship exists. Some counties, each with a large territory and abounding in crimes of the profit-producing varieties, are among the lowest in assessed valuations. In some such counties if the sheriff were to break up crime, and keep it broken up, he would exhaust every dollar derived both from his sheriff's fees and allowances and from his commissions as tax collector. What happens in some of those counties is open to the eyes of every person who passes that way—even legislators could see it. And it will remain that way until there is a rational revision of these ancient statutes so as to pay sheriffs for what they are required to do as sheriffs, instead of paying them as tax collectors and then expecting them to break up dives, pursue crime day and night to its lair—clean up their counties all, or practically all, at their own expense.

What, then, could be further from the public interest than to uphold the technical contentions made by the appellant county in the present case? These statutes should, in view of modern conditions and problems, be given a broad and liberal construction—as broad and liberal as the trial judge and the district attorney who know the conditions with which the sheriff has had to contend in each county may find the facts sufficient to support. Illiberality of interpretation and administration with reference to these picayunish statutes is but to invite the sheriff to attend to his tax collector's office and let the sheriff's duties ride upon an idle so far as can be excusably done. People complain about the laxity of the law's enforcement, but when they make up their minds to pay for law enforcement, specifically as such and not

merely by way of tax collections, they will get law enforcement, and in all probability not before.

As an example of all this, and as one among many, there was a great demand in the state for the suppression of slot machines. A stringent act was passed in 1938, Chapter 353, Laws 1938, requiring them to be seized and destroyed, yet not a word was said about any compensation to the sheriff for so doing, a work which if done with success must be pursued at night and not by day only, and everywhere throughout the county.

Pleas in abatement were filed in the trial court by which appellant county took the position that inasmuch as appellee had filed his several accounts with the circuit court and with the board of supervisors currently during the course of his term of office, he should not be permitted now to review them and to receive the compensation which corrected accounts shown to be due him, even though the original claims were made under a mistake as to the applicable statutes. This is not a case where a party is claiming under a contract or under a quantum meruit. The fees and compensation due to a sheriff are fixed by law, and he does not waive his lawful compensation by erroneously claiming and accepting less than what the law itself says he shall have. "The acceptance of less compensation than that established by law for the office does not estop an officer from subsequently claiming the legal compensation." 46 C. J., p. 1027, Sec. 275, and the numerous cases cited under note 6. To hold otherwise would be to incite some officers to claim more than due so as to be sure that they would not subsequently be thrown in a loss by not claiming enough.

Taking up the other contentions of the county, there may be first noticed the argument that the sheriff was allowed for deputies, as next hereinafter mentioned, and this brings into view subsection (e), Section 1804, Code 1930, which reads as follows: "The sheriff shall receive for attending in person or by deputy upon the terms of the chancery courts, circuit courts, and board of supervisors,

for himself and each deputy, not exceeding two in all, except on special order of the court, each day, to be paid out of the county treasury on the allowance of the court or board, and the issuance of a warrant therefor  .  .  . [$]5.00.''

The county sought to develop in the testimony, but has pursued the matter in the argument only in a general way, that the sheriff was allowed excessive sums for deputies, because the number of days for some deputies exceeded the total number of days during which the court was in session. We may take the last term of the circuit court at which appellee served, the October 1939 term, as illustrative of the other terms. The said October, 1939, term was actually in session 19 days, but the sheriff was allowed for one deputy, named Roach, 24 days, and another deputy, Heinrich, 24 days, and another, Davis, 35 days, and another, Ellison, 36 days. There were four other deputies for whom allowances were made, but these were for 15 days, 15 days and 9 days, respectively.

It is the evident contention of appellant that no per diem allowances may be made to the sheriff for deputies save for the days and the number of days that the court is actually in session. In this contention appellant is immediately confronted with Section 2044, Code 1930, which requires the sheriff to summon the jurors, sixty-two in all, Sec. 2039, Code 1930, as amended, see 1938 supplement, at least five days before the first day of court and to have his return thereon at the opening of court. And by Section 3008, Code of 1930, which requires witnesses before the grand jury to be summoned in vacation to appear at the approaching term according to the subpoenas applied for by the district attorney or any conservator of the peace, including, of course, the county prosecuting attorney.

Applying general knowledge of trial court work, or, as was said in Downing v. Hinds Co., 84 Miss. 29, 32, 36 So. 73, when we consider ''uniform usage in the state, tiding over all the legislative sessions,'' which furnishes a prac-

tical construction of statutes such as we have here before us, and which cannot be overlooked, we know that when the circuit courts in the state convene they proceed at once on the first day to empanel a grand jury, which thereupon is sent at once to enter upon its work, and that the work is to take up promptly charges against those held in jail. Numerous witnesses must, therefore, be ready to appear before the grand jury on the first day, and as speedily on that day, and the day or days following as may be done, and the sheriff receives not a cent for suffmoning grand jury witnesses either before or during a term. Pay for it can be made only by allowing him deputies to do it, and giving them a per diem compensation, and if they can get a per diem compensation only for the days after court convenes, then they get nothing for services before court unless the sheriff pays them out of his own pocket.

When the court empanels the grand jury, two petit juries are also immediately empaneled, and all the jurors draw three dollars a day each. There is thus a per diem jury expense of nearly $150 per day. The petit juries must be kept busy, else the court term is lengthened at an expense four or five times greater than that which three or four deputies employed for a few days in advance of the convening court would have cost. If upon the convening of the grand jury no witnesses, or only a few, have been summoned to appear on the first day of court, it would be necessary to put out at once a large number of deputies to get the witnesses, and in the meantime the grand jury, the petit juries, and the whole court organization would have to suffer inevitable delay and a prolongation of the term at an enormous expense and vexation, as compared with a small number of deputies put out a few days in advance of the convening of court.

It is not necessary to enlarge upon that which is obvious—it is not denied that the advance work above mentioned is required by statute, so far as the sheriff is concerned, and by every consideration of practical economy;

but it is said that nevertheless the sheriff must have it done and pay for it out of his own pocket, save what he recoup out of the nominal sum of $250 per year carried in subsection (f), Section 1804, Code 1930. It is to be observed, however, that it is not made mandatory upon any officer by Section 3008, Code 1930, to apply for subpoenas for grand jury witnesses before court convenes, although as already mentioned, it has now become the general practice, especially in counties wherein there is a county prosecuting attorney. Let us suppose then that no subpoenas are issued for grand jury witnesses until court convenes: It would be necessary for the court, under Section 3311, Code 1930, if under no other, to immediately authorize a number of riding deputies who would be paid by the county, and which would cost the sheriff nothing, but by delaying the court and its work would largely increase the entire court expenses to the county. If, however, the witnesses for the grand jury are summoned in a large part in advance, as is the general practice, the court could go immediately to work on convening, shorten its term, save large expense to the county, and yet, if the county's contention here were sustained, this would be at the expense of the sheriff, who would get nothing for his pre-court per diems, whereas he could get all his per diem expenses if only he waited until court had actually convened.

Such a grotesque and inequitable construction of these statutes should be avoided if reasonably possible, and we ought therefore to turn again to subsection (e), Section 1804, Code 1930, and note that it reads, not like Section 3311, Code 1930, which specifically says that the deputies, under that section, are limited by express words to those who may be employed "during the term of circuit court," but that in subsection (e) of Section 1804, Code 1930, the language is that "the sheriff shall receive for attending in person or by deputy upon the terms of the . . . circuit courts," etc. In one section the allowance is confined to attendance *during* the term, and the other is for

attendance *upon* the term. The word *"upon"* is not one of a precise or fixed significance when used in statutes, as may be seen in 43 Words & Phrases, Perm. Ed., pp. 429-446. It is more often interpreted as meaning close to, when time or place is involved. And in the standard dictionaries one of the ordinary definitions is stated to be "approximating to; about; also verging or bordering on."

We ought, therefore, to adopt that meaning of the language which serves the interest of economy to the county, the prompt transaction of its court business, and which avoids inequity to its chief executive officer, and hold that this statute allows a reasonable number of deputies to the sheriff to serve upon the term by getting ready for it, and that when the district attorney and the trial judge make a critical examination of these per-court deputy per diem allowances, and enter an order making the allowance, there is a compliance with the requirements of the subsection in question, although it thereby covers a reasonable number of days before the actual convening of the court.

And there is still another consideration: We ought to assume that it was the purpose of the legislature, although it has failed so to do, to make the sheriff's office, as such, at least self-sustaining, and that he should not be required to take out of his earnings as tax collector, a wholly separate office, with entirely separate and distinct duties, the money with which to conduct his office as sheriff. The allowance of $250 per year, as made by subsection (f), Section 1804, Code 1930, is not enough in the large counties to cover much more than the keeping of the dockets and the various records which must be made by the sheriff in his office. In counties where there are county courts, he must summon during the year approximately 1,000 jurors for all courts, which, at $250 a year, would be two bits a head, while he is allowed for summoning the ordinary witness fifty cents each. In the larger county, such as here involved, the $250 annual allowance would be but, comparatively speaking, a drop

in the bucket, not nearly covering the actual expenses necessarily involved. And even as the trial judge construed these sections the compensation is penuriously small, except perhaps in an occasional year of extreme quietude, when only one term is held, and then only for a day or two as sometimes, although rarely, happens, in which case the court is authorized to cut down the allowance under the phrase, "a sum only commensurate with the work," or when it is known to the district attorney and the trial judge that the sheriff is making no more than a pretense towards his duties as sheriff.

And this brings us conveniently to the contention by the appellant county that in order that the sheriff may receive his allowance of as much as $250 per year under subsection (f), Section 1804, he must present an itemized fee bill for everything he has done under the subsection. That statute reads as follows: "(f) The sheriff shall receive for summoning jurors, impaneling grand juries, serving all public orders of court in his county, and for all other public services not otherwise provided for, a sum only commensurate with the work as shown in fee-bill for services rendered, not exceeding, for each year . . . [$]250.00."

The contention by the county is to look at the clause "as shown in fee-bill for services rendered" and close the eyes to the other cause, "and for all other public services not otherwise provided for." If the other public services are not provided for as fees, how can a fee bill be presented for them? For instance, the sheriff is required by Section 3334, Code 1930, to be the jailer and to perform the most responsible duties in that regard and must, under Section 3328, keep a detailed jail docket and yet there is no provision other than under subsection (f) of Section 1804 to pay him a cent therefor. How then can he itemize a fee bill as jailer, or as the keeper of the jail docket, when there are no fees fixed therefor? Not less than fifteen or twenty other important matters along the same lines could be mentioned, if space permitted. For

the reason that the district attorney and the trial judge will know by what has been going on in the county from term to term and during term time and will know the diligence or the want of it by which the sheriff has performed his duties, they will have all the information necessary as to how much or whether all of the $250 shall be allowed, a consideration which will be further mentioned under subsection (g).

The next contention to be noticed is that which is raised under subsection (g), Section 1804, which reads as follows: "(g) The sheriff's fees in state cases where the state fails in the prosecution or in cases of felony, in which the defendant is convicted, but is unable to pay the costs, to an amount not exceeding . . . [$]750.00 in any year, shall be paid out of the county treasury when allowed by the board of supervisors on the certificate of the clerk that the account of the sheriff for his fees has been allowed by the circuit court and entered on the minutes." The contention of appellant county is that this allowance can be made only upon an itemized cost bill in each case. It is significant that, while subsection (d), Section 1804, Code 1930, requires that in making a similar allowance to the clerk as respects such cases "an itemized account of the fees in each case" must be presented, the subsection dealing with the allowance to the sheriff contains no such requirements of an itemized account in each case.

This must have been done in recognition of the fact that the work of the sheriff in establishing the identification of the guilty person or persons when a crime has been committed, and the time after time when a crime is reported, and in pursuing and capturing such persons, as well as those who have escaped—often through days or even weeks of such work, and sometimes of the most dangerous nature—would put that service in a different category from that of the clerk, and that the district attorney and trial judge would know of what had been going on in the county as regards the work of the sheriff as the

chief peace officer, and would therefore know what part, or whether all, of the $750 per year should be allowed, and without the necessity of itemized details. And in view of what has been said, the district attorney and the trial judge ought to be authorized to give to this subsection a broad and liberal construction, otherwise the sheriff, for the most intensive and dangerous of all his work, would get but little or no compensation at all.

Appellant county showed by proof, which was undisputed, that no deputy was ever in attendance upon the sessions of the board of supervisors, that at most sessions the sheriff himself was not in actual attendance, and that no services were ever rendered by the sheriff under that portion of Section 1789, Code 1930, which provides that "the sheriff may be allowed . . . for services required of him by the board of supervisors for which no fees are fixed, a sum not exceeding fifty dollars a year," and appellant county has objected to any allowance to the sheriff for more than the per diem expenses of the sheriff himself upon the sessions of the board of supervisors, and as to this only for the days of his actual presence.

Subsection (e), Section 1804, Code 1930, above quoted, has the effect to require the sheriff, or else a deputy, to be in attendance at every term of the board of supervisors. Thus, the sheriff or a deputy must be subject to call, if not actually present, at all times during the sessions of the board; and since the law requires one or the other to be there subject to call, the law required a per diem allowance for one, but not for both unless both are actually called on, and then only for the time both were being thus employed. But the board throughout allowed for two, and, therefore, must pay the legal rate for two. Having raised every technicality that could be thought of, they must justly, as well as legally, submit to the rule that their own minutes cannot be opened as to factual matters by parol.

And likewise as to the allowance for services to the board for which no fees are fixed. The sheriff is required

to stand ready at all times to perform this service; and although such services if computed on an analogous fee basis should happen to exceed fifty dollars per year, yet the sheriff could get no more; whence it must follow that in any event he shall have that much.

In its notice of affirmative matter under the plea of the general issue, appellant averred that it would prove that allowances were made for oil and gasoline, and that this would be offered by way of recoupment; and it was shown that for certain named special deputies allowances of approximately one dollar per day for oil and gasoline were made for each of them. No proof was made, however, of any of the facts in respect to the stated allowances other than the bare fact that they were made. So far as the record shows it may have been impossible in that county at the seasons of the year when the circuit courts were being held to obtain riding deputies of the character to be entrusted with the work, except by reimbursing them for the oil and gasoline consumed in the work; or, more important, it may have been found by actual experience that longer hours would be put in, and more work would be accomplished by each special deputy by making that reimbursement to him so that three deputies, say, would, under such an arrangement, do the work at a total cost of $18 per day; whereas, without such a reimbursement five deputies would in actual fact be required, at $25 per day, thus effecting a saving to the county. It appears probable from the record that the allowances and reimbursements to the special deputies were immediately paid over in full by the sheriff to each special deputy, not a cent of it remaining in the hands of the sheriff.

If by this arrangement money was saved to the county, there is no equity in point of moral right in its demand for a recoupment or set-off on the matter mentioned in the foregoing paragraph, and if deducted from the present judgment, thereby reversing the judgment to that extent, it would have to be done on the application of strict principles of the law of trover and conversion, which presents

a question which, to say the least, is debatable, for there is the principle, which may or may not be applicable, that no person may complain of what has done him no harm, but which, on the contrary, has been to his profit; and yet this assignment has not been mentioned in appellant's brief. There is an appropriate situation, therefore, for the application of the rule that where no argument is made in support of an alleged error the appellate court may, at its option, treat the contention as abandoned. See the cases digested on this point in 2 Miss. Dig., Appeal and Error, key number 1078(1), p. 390. So that no opinion is expressed or intimated on the question of the allowances for oil and gasoline, but a declination to reverse on the matter for the reason last above stated.

The foregoing opinion has been of an unusual length. A sufficiently full presentation of the situation as regards the sheriffs and their work in this state has been thought of such importance as to require not less than what has been said about it.

**Smith, C. J.,** delivered a dissenting opinion.

I dissent in part from the judgment just rendered, as will appear from what I am now about to say.

The appellee was entitled, under paragraph (e) of section 1804 of the Code, to $5 per day each for himself and one deputy for attending the sessions of the circuit court, and since he had been paid only $3 per day for each therefor, he was entitled to the $2 per day for each here claimed by him. He was not entitled to the per diem allowances heretofore made him for the service of deputies rendered prior to the beginning of the terms of the circuit court, and should have been charged back therewith.

These extra deputies were evidently riding bailiffs, authorized by section 3311 of the Code, which reads as follows: "During the term of circuit court, the court may in its discretion by order entered on its minutes

allow the sheriff a sufficient number of riding bailiffs at five dollars per day, to be paid by the county on allowances of the court on the issuance of a warrant therefor." Under this section, the sheriff's authority to employ riding bailiffs at the expense of the county arises when, but not until, the court has so authorized "by order entered on its minutes," and the requirement that he shall be paid therefor "on allowances of the court" is manifestly for the purpose of requiring the court to determine whether or not he has actually employed and used the bailiffs previously authorized. These riding bailiffs must be appointed in writing, as all deputy sheriffs must be, section 3310 of the Code, and are to serve only "during the term of circuit court," not before the term has begun or after it has ended.

The allowance to the sheriffs under paragraph (f) of section 1804 is not a flat sum of $250, but only such an amount as is "only commensurate with the work [done] . . . not exceeding, for each year,......[$]250.00," which ex necessitate requires a disclosure, which is here absent from the evidence of the work done in order that it may appear what allowance is commensurate therewith. Neither does paragraph (g) of the section authorize the payment to the sheriff of a flat sum of $750, but only the payment to him of his "fees in state cases where the state fails in the prosecution or in cases of felony, in which the defendant is convicted, but is unable to pay the costs, to an amount not exceeding......[$]750.00." The fees the sheriff has earned and failed to collect must be disclosed to the court in order for it to appear what is due him under this paragraph. His records, if kept in such form as to have enabled him to collect, if possible, his fees from the defendants in those criminal cases, would enable him easily to comply herewith. No evidence meeting the requirement of these two paragraphs of the section appears in the record. Consequently no recovery should have been awarded the appellee thereunder; but

this defect could be met on a return of the case to the court below.

Section 203 of the Code requires the sheriff to "attend all meetings of the board of supervisors, either in person or by deputy," but section 1804 seems not to confine him to attendance in person or by deputy but to permit him to attend these meetings in person and by a deputy at the same time. I doubt whether the legislature so intended, but the statute is so written. Ita lex scripta est. The appellee was therefore entitled to recover the balance due him of $2 per day each for himself and one deputy for attending the sessions of the board of supervisors.

Section 1789 of the Code provides that: "The sheriff may be allowed for entering, returning and serving the road overseer's commission, and for services required of him by the board of supervisors for which no fees are fixed, a sum not exceeding fifty dollars a year." This allowance is not of a flat sum of $50, but is for services rendered not to exceed $50. This requires a disclosure of the services rendered in order for the court to determine what part of the $50 should be allowed therefor. There were no overseers' commissions for the appellee to serve during his term of office, and the evidence does not disclose that he rendered any "services required of him by the board of supervisors for which no fees are fixed." Consequently no allowance should have been made him by the court below therefor. The fees and prerequisites of sheriffs are such only as are authorized by a statute, and we have no statutes authorizing the repayment to them of money spent by them or their deputies for oil and gasoline used by them in automobiles when discharging their official duties. The allowances and payments heretofore made the appellee therefor by the circuit court, and paid by the county were illegal. Whether such an allowance should be made is for the legislature, and not for the courts. While authority would seem not to be necessary therefor, all of the authorities agree that illegal payments from public money made by a county to a sheriff, or other pub-

lic officer may be recovered from him by the county. County Court v. Long, 72 W. Va. 8, 77 S. E. 328, Ann. Cas. 1915B, 808, and the long list of cases cited, in the annotation to this case in Ann. Cas. 1915B, at page 811. The court below should have charged the appellee with these allowances for gasoline and oil, and deducted the amount thereof from the judgment awarded him.

It follows from what I have said that I am of the opinion that the judgment of the court should be affirmed as to some of the separate items composing it, and reversed and remanded as to the others.

**Alexander, J.**, delivered a dissenting opinion.

I join in the dissent filed by CHIEF JUSTICE but with the exception that in my opinion the flat allowance by the board of supervisors under Section 1789 was proper, the statute, unlike Section 1804 (f) and (g), requiring no itemization.

I would lay stress upon my inability to justify the allowance of travel expenses to riding bailiffs or deputies despite our holding that such charges were illegal. If improper, the mere allowance is no validation. The same principle by which we allowed appellee to recover an overpayment of $200 improperly paid by him should persist to compel recovery of amounts improperly paid to him. The suit is, under the pleadings, in the nature of a mutual accounting. I can see no reasonable basis for distinguishing between the debits and the credits therein.

The issue is not whether the per diem is adequate, but whether our power to increase it is so.